## CITY OF NEW HAVEN *v.* AFSCME, COUNCIL 15, LOCAL 530, AFL-CIO
### (13363)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued June 1—decision released July 26, 1988

*Edward Mattson,* deputy corporation counsel, for the appellant (plaintiff).

*Jackson T. King,* with whom, on the brief, was *Susan King Shaw,* for the appellee (defendant).

PETERS, C. J. The sole issue in this appeal is whether arbitrators violated public policy by awarding back pay to a policeman for the period between his termination for a criminal conviction and his reinstatement following reversal of his conviction on appeal. Pursuant to a collective bargaining agreement between the parties, the defendant, AFSCME, Council 15, Local 530, AFL-

CIO (AFSCME), invoked arbitration on behalf of the policeman, Ralph Hodge. The arbitrators found, over the city's objection, that the grievance was arbitrable and that Hodge had suffered discipline without just cause. They awarded Hodge the wages and benefits that he had lost as a result of his discharge.[1] The city then filed an application in the Superior Court to vacate the arbitration award pursuant to General Statutes § 52-418.[2] The trial court denied the city's application. The city has appealed that judgment. We find no error.

The relevant facts are not in dispute. Patrolman Ralph Hodge of the New Haven police department was convicted of violating General Statutes § 29-9,[3] which prohibits a police officer from accepting gifts or awards to influence his behavior in office. In 1983, the board

---

[1] AFSCME asserted at oral argument that if it prevails, any wages or benefits that Hodge earned during the time of his termination will be subtracted from the back pay awarded to him. "There is general agreement by courts, arbitrators, and the NLRB that outside earnings properly are deducted from back pay." F. Elkouri & E. Elkouri, How Arbitration Works (3d Ed. 1973) p. 358.

[2] General Statutes § 52-418 (a) provides: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[3] General Statutes § 29-9 provides: "ACCEPTANCE OR OFFERING OF GIFTS OR REWARDS BY OR TO STATE OR LOCAL POLICE. (a) Any state police officer appointed as provided in section 29-4, any police officer of any city, town or borough and any person having the power of arrest who, directly or indirectly, receives a reward, gift or gratuity for the purpose of influencing his behavior in office . . . shall be fined not more than one hundred dollars or imprisoned not more than six months or both, and the police officer shall be dishonorably discharged from the division of state police or from the police department."

of police commissioners discharged Hodge. The sole ground for discharge was the fact that Hodge had been convicted. The city neither referred to the underlying misconduct nor undertook to inquire into what had transpired. The city relied instead on that part of § 29-9 that provides that a police officer convicted of violating that section "shall be dishonorably discharged from the division of state police or from the police department." At the time of Hodge's discharge, the city was aware that Hodge was appealing his conviction.

Hodge's appeal resulted in the reversal of his conviction. The Appellate Court ruled that the trial court had erroneously determined that § 29-9 is a lesser included offense of General Statutes § 53a-148. *State* v. *Hodge,* 5 Conn. App. 125, 128–29, 497 A.2d 79 (1985). On further review after certification, this court concluded that Hodge's conviction had to be set aside because the trial court had made an erroneous finding about the intentionality of Hodge's conduct. *State* v. *Hodge,* 201 Conn. 379, 383, 517 A.2d 621 (1986). On January 26, 1987, the city voluntarily reinstated Hodge without loss of seniority but denied his claim for back pay and benefits for the period of his discharge.

AFSCME filed a grievance on behalf of Hodge and submitted the dispute to the Connecticut state board of mediation and arbitration.[4] The city objected, claiming that the dispute was not arbitrable. It contended that Hodge's termination "was required by law and therefore is not subject to examination under the contract." The city did not, however, avail itself of the opportunity to obtain an immediate judicial determi-

---

[4] While the arbitration was pending, the city conducted internal investigations into Hodge's misconduct. As a result of its investigation, the city discharged Hodge a second time on June 22, 1987. Pursuant to a stipulated arbitration award, Hodge tendered his resignation on October 6, 1987, and his June 22 termination was expunged. This stipulated arbitration award is not at issue in this litigation.

nation of arbitrability pursuant to General Statutes § 52-415.[5] *Daginella* v. *Foremost Ins. Co.,* 197 Conn. 26, 34, 495 A.2d 709 (1985). In these circumstances, despite the city's reluctance to do so, it submitted the arbitrability of the grievance to the arbitrators, and is as bound by the arbitrators' resolution of that issue as it is bound by any other arbitral determination. *East Hartford* v. *East Hartford Municipal Employees Union, Inc.,* 206 Conn. 643, 648, 539 A.2d 125 (1988); *Costello Construction Corporation* v. *Teamsters Local 559,* 167 Conn. 315, 318, 355 A.2d 179 (1974).

The arbitrators framed the issues as follows: "Is the grievance arbitrable? If so, has Officer Ralph Hodge suffered discipline without just cause by virtue of the City's refusal to make him whole for all losses he has suffered from the date of his discharge to the date of his reinstatement? If so, what shall be the remedy?" The arbitrators decided that the grievance was arbitrable, that Hodge had suffered discipline without just cause and that the city should pay Hodge all wages and benefits that he lost as a result of his discharge. The trial court denied the city's application to vacate the award.

On appeal, the sole issue is whether the arbitration award so clearly violated public policy that it should have been vacated by the trial court as exceeding the arbitrators' power under § 52-418 (a) (4). The city main-

---

[5] General Statute § 52-415 provides in pertinent part: "ARBITRATORS MAY ASK ADVICE OF COURTS. At any time during an arbitration, upon request of all the parties to the arbitration, the arbitrators or an umpire shall make application to any designated court, or to any designated judge, for a decision on any question arising in the course of the hearing, provided such parties shall agree in writing that the decision of such court or judge shall be final as to the question determined and that it shall bind the arbitrators in rendering their award."

The city chose not to pursue this option, however, and, after first objecting to arbitration of the grievance, chose to submit the issue of arbitrability to the arbitrator. The city now requests judicial intervention.

tains that it cannot be required to give back pay to a police officer whose discharge was mandated by statute. AFSCME claims, to the contrary, that the arbitrators' award is not inconsistent with any statutory mandate or the public policy of this state and should therefore be enforced. We agree with AFSCME.

This court has long endorsed arbitration as "an alternative method of settling disputes 'intended to avoid the formalities, delay, expense and vexation of ordinary litigation.' *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 107, 438 A.2d 1171 (1981); *Administrative & Residual Employees Union* v. *State*, 200 Conn. 345, 349, 510 A.2d 989 (1986)." *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3*, 203 Conn. 133, 145, 523 A.2d 1271 (1987). We have recognized that when arbitration is consensual, rather than statutorily imposed, judicial review is limited in scope. *Convalescent Center of Bloomfield, Inc.* v. *Department of Income Maintenance*, 208 Conn. 187, 199, 544 A.2d 604 (1988); *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3*, supra, 154; *Bruno* v. *Department of Consumer Protection*, 190 Conn. 14, 18, 458 A.2d 685 (1983); *Carroll* v. *Aetna Casualty & Surety Co.*, 189 Conn. 16, 20, 453 A.2d 1158 (1983); *Bic Pen Corporation* v. *Local No. 134*, 183 Conn. 579, 583, 440 A.2d 774 (1981). If the parties mutually agree to submit their dispute to arbitration, the resulting award is not reviewable for errors of law or fact. *Stratford* v. *Local 134, IFPTE*, 201 Conn 577, 585, 519 A.2d 1 (1986); *Wilson* v. *Security Ins. Group*, 199 Conn. 618, 626–27, 509 A.2d 467 (1986); *Milford Employees Assn.* v. *Milford*, 179 Conn. 678, 683, 427 A.2d 859 (1980); *Waterbury* v. *Waterbury Police Union*, 176 Conn. 401, 404, 407 A.2d 1013 (1979). Judicial review of unrestricted submissions is limited to a comparison between the submission and the award to see whether, in accordance with the powers conferred upon the

arbitrators, their award conforms to the submission. *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* supra, 153–54; *Bic Pen Corporation* v. *Local No. 134,* supra, 584; *New Britain* v. *Board of Mediation & Arbitration,* 178 Conn. 557, 562, 424 A.2d 263 (1979); *Board of Education* v. *Bridgeport Education Assn.,* 173 Conn. 287, 291, 377 A.2d 323 (1977).

In their collective bargaining agreement, the city and AFSCME agreed to arbitrate grievances involving the discharge or discipline of an employee. Although the city recognizes that the authority conferred by this agreement encompasses arbitral power to determine questions both of law and of fact, the city would have us carve out a broad public policy exception to the limited review otherwise afforded to arbitral awards. We decline to do so.

We have recognized two narrow exceptions grounded in public policy to the broad authority that arbitrators are ordinarily permitted to exercise over unrestricted submissions. First, with respect to constitutional questions, although arbitrators may decide legal issues that have constitutional implications, they exceed their authority when they address the constitutional validity of a statute. *Stratford* v. *Local 134, IFPTE,* supra, 585–86; *Carofano* v. *Bridgeport,* 196 Conn. 623, 637–38, 495 A.2d 1011 (1985); *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 345, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985). That exception has no relevance in the present circumstances. Second, with respect to matters of public policy generally, arbitrators exceed their authority if their award orders a party to engage in conduct that is patently illegal or in clear violation of public policy. *Stratford* v. *Local 134, IFPTE,* supra, 585; *Board of Trustees* v. *Federation of Technical College Teachers,* 179 Conn. 184, 195, 425 A.2d 1247 (1979); Gorman, Basic Text on Labor Law,

Unionization and Collective Bargaining (1976) p. 593. The party challenging an arbitration award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. We "make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings." *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* supra, 145; *Administrative & Residual Employees Union* v. *State,* supra, 349.[6]

Our view that public policy exceptions to arbitral authority should be narrowly construed finds support in a recent decision of the United States Supreme Court. In *United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.,* 484 U.S. 29, 44, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987), the United States Supreme Court concluded that a policy against the operation of dangerous machinery by persons under the influence of drugs or alcohol, while "firmly rooted in common sense," did not permit a court to set aside an arbitration award. The court stated: "[A] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." ' " Id., 43; see *W. R. Grace & Co.* v. *Rubber Workers,* 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983) (award of back pay did not violate public policy mandating obedience to judicial orders because the award did not compel the employer in *Grace* to violate a district court order, but merely required the payment of retrospective damages).

---

[6] "[T]he public policy defense will not often succeed, particularly if the party using it did not challenge the arbitration process at an earlier stage, such as by moving for a stay of arbitration." M. Domke, Commercial Arbitration (Rev. Ed. Wilner 1984) § 33:03, p. 470.

In light of the narrow scope of the public policy limitation on arbitral authority, the city can prevail in this case only if it demonstrates that the award of back pay to Patrolman Hodge clearly violated the public policy expressed by § 29-9. We conclude, as did the trial court, that the city has not met this burden. Nothing in § 29-9 expressly addresses the effect of a criminal conviction, under this section, when the conviction is subsequently reversed in a timely appeal. The arbitrators' construction of § 29-9 therefore does not conflict with any direct statutory mandate. Further, the arbitrators' construction is a reasonable accommodation of the statutory mandate of General Statutes § 54-142a (e),[7] which requires a person who is acquitted of criminal charges to be placed in the same position he would have occupied had he not been arrested. The arbitrators' interpretation of § 29-9 as not precluding the award of back pay in the circumstances of this case is, therefore, at least a reasonable construction of the statute.[8]

---

[7] General Statute § 54-142a (e) provides in pertinent part: "Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath."

[8] The city relies on *Matter of Toro* v. *Malcolm,* 44 N.Y.2d 146, 375 N.E.2d 739, 404 N.Y.S.2d 558 (1978), to support its argument that the arbitrators' interpretation of General Statutes § 29-9 is impermissible. We are not persuaded. In *Matter of Toro* v. *Malcolm,* the court construed N.Y. Public Officers Law § 30 (5) (McKinney 1988), which states that every office "shall be vacant" if the officer is convicted of a felony or a crime involving violation of his oath of office. Unlike § 29-9, Public Officers Law § 30 specifically vests discretion in the appointing authority to reinstate an officer whose conviction has been vacated and to "award salary or compensation in full or in part for the period from the date such office became vacant to the date of reinstatement . . . ." The *Toro* court held that the authority's exercise of discretion should not be overruled by a judicially created right to back pay; the court did not hold that the authority, directly or through arbitration, could not provide such an award. *Toro,* therefore, provides no support for the city's public policy argument.

The city also relies upon *Avco Corporation* v. *Preteska,* 22 Conn. Sup. 475, 174 A.2d 684 (1961). In *Avco Corporation,* the trial court vacated an arbitration award that reinstated the defendant with back pay after he was terminated

Having adopted a reasonable construction, the arbitrators have not exceeded their authority under § 52-418a (4). In the absence of a clear arbitral misreading of statutory mandates or other egregious arbitral violation of public policy, the city has failed to prove that the arbitral award should be vacated.

Our conclusion that the trial court correctly refused to vacate the arbitral award in this case rests on the terms of the submission made to the arbitrators. The city has an unquestioned right and duty to investigate the facts underlying the alleged misconduct of its police officers, to conduct hearings and to discharge officers found guilty of misconduct. *Rawlings* v. *New Haven*, 206 Conn. 100, 537 A.2d 439 (1988). Contrary to the city's assertions, however, the arbitrators have neither interfered with the city's duties in this regard nor required the city to continue to employ an officer found guilty of violating § 29-9. Rather, the arbitrators have ordered the city to reimburse lost wages and benefits to an employee terminated solely because of a conviction that was later overturned. The city chose not to conduct hearings before discharging the officer, chose the grounds upon which to terminate him, and chose to forego a judicial determination of the arbitrability of his discharge. The city is, therefore, bound by the arbitrators' award.

There is no error.

In this opinion the other justices concurred.

---

following his conviction for running a gambling operation on the employer's premises. *Avco Corporation* is, however, distinguishable because, in that case, the defendant's conviction was neither reversed nor vacated. Without otherwise addressing its merits, we find *Avco Corporation* uninformative in the present circumstances.